# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **TRUBRIDGE, INC.** | ) |
| **Plaintiff,** | ) |
| v. | ) CIVIL ACTION NO. _____ |
| **TIMETREX SOFTWARE, INC.,** | ) |
| **Defendant.** | ) |

## VERIFIED COMPLAINT

Plaintiff TruBridge, Inc. ("TruBridge") files this its verified Complaint.

## PARTIES

1. Plaintiff TruBridge, Inc. ("TruBridge") is a Delaware corporation with its principal place of business in Mobile, Alabama.

2. TruBridge was formerly known as Computer Programs & Services, Inc. ("CPSI"). In the spring of 2024, CPSI subsidiary, TruBridge, LLC, merged into CPSI, and CPSI changed its name to TruBridge, Inc.

3. Defendant TimeTrex Software, Inc. ("TimeTrex") is a Province of British Columbia Corporation with its principal place of business in West Kelowna, British Columbia, Canada.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this claim under 28 U.S.C. § 1332(b) because, as set forth below, the amount in controversy exceeds $75,000, exclusive of interest and costs, and the controversy is between a citizen of a state (Delaware or Alabama) and a citizen of a foreign country (Canada).

5. This Court has personal jurisdiction over TimeTrex because TimeTrex consented to the exercise of personal jurisdiction by this Court for any action brought to enforce or interpret the Master Agreement at issue in this civil action.

6. Venue is proper because TruBridge and TimeTrex consented to venue in this judicial district for all actions brought to enforce or interpret the Master Agreement at issue in this civil action.

## FACTUAL BACKGROUND

7. TruBridge provides an electronic health record system ("EHR"), software, business management, consulting, management technology services and other goods and services to rural and community healthcare organizations.

8. In association with the EHR, TruBridge offers bundles of services to its customers, one or more of which includes a human resources and payroll solution.

9. TruBridge and TimeTrex duly executed a TimeTrex Master Agreement (the "Agreement") on or around December 13, 2019. *See* Exhibit 1 at 15.

10. Under the Agreement, TimeTrex granted TruBridge exclusive rights to license TimeTrex payroll software during the term of the Agreement and at least two years afterwards. *See* Exhibit 1, §§ 3.9, 8.5, 8.6.

11. TruBridge offered TimeTrex's HR and payroll solution as a white label product, "3R," to its customers and as part of service bundles.

12. Approximately 135 hospitals that are TruBridge customers used or use 3R to process payroll for thousands of employees.

13. In early 2024, Mike Benoit, President of TimeTrex, told Jeremiah Rothschild, Senior Vice President and Chief Strategist for TruBridge, that he no longer wanted to support

TruBridge and instead wanted TruBridge to turn over its customers to TimeTrex.

14. A few months later, on May 16, 2024, TimeTrex terminated the Agreement, pursuant to Section 8.1 of the Agreement. The termination was to be effective as of December 12, 2024. *See* Exhibit 1, § 8.1. *See also* Exhibit 2.

15. The termination letter said that TimeTrex was terminating its relationship with TruBridge "after deep reflection and strategic considerations related to [its] company's future direction and product roadmap." *Id*.

16. In the termination letter, TimeTrex also offered to provide support up to two years following December 12, 2024 in accordance with § 8.1 of the Agreement. *Id.*

17. In January 2025, TruBridge communicated to its customers that it would be discontinuing 3R and moving to another human resources and payroll solution provider, Paylocity. The process to transition customers to Paylocity would begin in February 2025 and be completed by November 2025.

18. Shortly after making the announcement about the shift to Paylocity, TruBridge began receiving messages from customers saying that TimeTrex had told them it would continue to support hospitals outside of TruBridge's offerings.

19. Moreover, upon information and belief, TimeTrex has told TruBridge customers that the TruBridge partnership was coming to an end but that the termination would not impact their TimeTrex experience in any way, and they can continue to use the TimeTrex product as well as TimeTrex's support of the product.

20. TimeTrex also falsely told TruBridge customers that TruBridge was responsible for ending the partnership and further misled TruBridge customers by telling them that TruBridge was withholding permission for TimeTrex to enter into an agreement with customers when TimeTrex

terminated the agreement. More particularly, shortly after announcing the transition to Paylocity, TruBridge received an email from a customer stating that TruBridge should not "block us from contracting directly with them" if TruBridge was "no longer going to keep the contract." A subsequent email stated that if TruBridge did not release the customer from their contract, the customer would contact their attorney to "force the issue" with TruBridge. These communications made it clear that TimeTrex aimed to poach TruBridge's customers, even if having to rely on false statements to do so.

21. These communications violated TruBridge's exclusive rights under the Agreement, which grants TruBridge "exclusive licensing rights for hospitals, clinics, and skilled nursing facilities that have purchased [TruBridge's] EHR solution." *See* Exhibit 1, § 3.9.

22. TimeTrex has intentionally interfered with TruBridge's contracts with its customers in an attempt to compete with TruBridge in the human resources and payroll services space.

23. TimeTrex is misrepresenting to TruBridge customers the reason for the dissolution of the relationship.

24. TimeTrex has also breached the confidentiality provision of the Agreement by sharing ". . . the terms and conditions of the Agreement," which constitutes Confidential Information under the Agreement. *See* Exhibit 1, § 4.1.

25. Counsel for TruBridge sent a cease-and-desist letter to TimeTrex on January 30, 2025, demanding that TimeTrex "immediately stop, and instruct its employees and representatives to stop, employing such deceptive and defamatory sales tactics and immediately cease and desist from any further and wrongful deceptive communications regarding TruBridge and CPSI." Exhibit 3 at 3.

26. The parties attempted to resolve the issues between them. During these discussions and particularly on March 11, 2025, TruBridge made it clear that TimeTrex's marketing of TruBridge customers would result in litigation.

27. In spite of those conversations, on March 13, at 3:36 p.m., TimeTrex contacted a TruBridge customer asking the hospital to sign with TimeTrex.

28. The client contact specifically questioned the TimeTrex representative about not being able to contract with TruBridge customers and the TimeTrex representative said that the prohibition no longer applied.

29. In addition, on March 24, 2025, TruBridge discovered that a TruBridge customer created a TimeTrex support login effectively deleting TruBridge's permission group. The TimeTrex support login accessed TruBridge's customer account on March 24, at 4:19 p.m., from West Kelowna, BC, Canada. The use of this login by TimeTrex is a violation of the "Support and Maintenance Rider" of the Agreement, in particular, that "Support Services are provided to [TruBridge] directly and are not provided to [TruBridge's] customers or end-users" and "TimeTrex does not provide Support of any kind for [TruBridge's] end-users." *See* Ex. C to Exhibit 1, §§ 2.3, 3.4.

30. TimeTrex has further solicited TruBridge customers and sent some TruBridge customers proposals, giving the false impression that TimeTrex can contract with TruBridge customers.

31. TimeTrex's actions have disrupted TruBridge's relationships with its customers. Many of TruBridge's deals are bundled—i.e., payroll software is included with other products or services—and TimeTrex's actions have caused confusion about what capabilities TimeTrex has compared to TruBridge. Customers do not realize that essential data, interfaces, and functionalities

would not be available with TimeTrex.

32. TimeTrex's actions are delaying TruBridge customers' transition to Paylocity. This delay could cause TruBridge to have to pay for a longer period of post-termination support than it would have otherwise, potentially costing TruBridge over $1 million in additional fees.

33. Due to TimeTrex's actions, TruBridge has had to dedicate additional time and substantial human resources responding to customer concerns.

34. TimeTrex's actions are damaging TruBridge's reputation and business relationships.

35. TimeTrex's actions are causing some TruBridge customers to switch to an alternative vendor other than TimeTrex or Paylocity. When TruBridge loses human resources and payroll business, it loses value on the entire suite of products it has sold to the customer.

36. TimeTrex's actions are causing some TruBridge customers to consider other EHR or Revenue Cycle Management (RCM) providers.  There is a material risk of customers not renewing their contracts with TruBridge.

37. TimeTrex has threatened to turn off service to TruBridge customers if TruBridge does not pay TimeTrex more money. Due to this threat, TruBridge has had to make contingency plans, as missing a payroll due to a system being shut down would be devastating to the rural communities TruBridge serves.

38. TruBridge operates in a competitive market in which failing to provide its intended services, especially payroll systems, would irreparably damage its reputation and ability to obtain business.

39. Due to the length of TruBridge's contracts, potential monetary damages are difficult to ascertain at this time. However, and dependent upon the term of the agreement, the

total cost of the average TruBridge package, including 3R, could easily exceed $1,000,000.

40. Importantly, monetary damages alone are insufficient to address the impact of TimeTrex's actions on TruBridge's business operations and client relationships.

41. TimeTrex has intentionally and maliciously interfered with TruBridge's contractual and business relationships to injure TruBridge's ongoing business and reputation in the healthcare industry and get business for itself.

## COUNT I
## BREACH OF CONTRACT

42. TruBridge incorporates by reference Paragraphs 7-41 as though fully set forth herein.

43. TruBridge had an executed Agreement with TimeTrex.

44. The Agreement contained an exclusivity provision, granting to TruBridge exclusive licensing rights for TimeTrex's product. *See* Exhibit 1, § 3.9.

45. TimeTrex breached TruBridge's rights by telling TruBridge customers that they would be able to continue to "enjoy[] everything TimeTrex has to offer."

46. The Agreement contained a confidentiality provision. *See* Exhibit 1, § 4.1.

47. TimeTrex breached the confidentiality provision by misrepresenting to TruBridge customers the reason for the dissolution of the TruBridge-TimeTrex relationship.

48. The Agreement contained a "Support and Maintenance Rider" such that Support Services are provided to TruBridge directly, and TimeTrex does not provide Support of any kind to TruBridge's end-users. *See* Ex. C to Exhibit 1, §§ 2.3, 3.4.

49. TimeTrex breached the terms and conditions of the Support and Maintenance Rider by accessing a TruBridge customer system and TruBridge environment through a TimeTrex login to provide direct support to TruBridge's customer.

50.  TruBridge was damaged by these TimeTrex actions.

## COUNT II
## TORTIOUS INTERFERENCE WITH
## CONTRACTUAL/BUSINESS RELATIONSHIPS

51.  TruBridge incorporates by reference Paragraphs 7-50 as though fully set forth herein.

52.  TruBridge has ongoing contractual and/or business relationships with healthcare providers across the nation. As a part of these ongoing contractual and/or business relationships, TruBridge has been providing a payroll service to its customers under the brand "3R."

53.  TimeTrex knew or had reason to know of TruBridge's contractual and/or business relationships with approximately 135 healthcare providers, considering TimeTrex offered payroll services as a white label product to these providers.

54.  TimeTrex, without justification or privilege, intentionally interfered with said business and/or contractual relationships by pursuing TruBridge's customers as its own customers.

55.  TimeTrex's actions are wrongful and actionable because they are a direct attempt to injure TruBridge's business and build TimeTrex's own business at TruBridge's expense.

56.  By terminating its contractual relationship with TruBridge and then attempting to poach TruBridge's customers, TimeTrex's actions have caused TruBridge's customers to become confused and to consider discontinuing their business relationships with TruBridge.

57.  TimeTrex's unjustifiable actions have actually and proximately caused significant injury to TruBridge, including fielding customer calls, the material risk of approximately 135 contracts being terminated, and irreparable reputational damage.

58.  TimeTrex's continued acts have caused and will continue to cause TruBridge significant injury. TruBridge has no adequate remedy at law for the injury TimeTrex's actions

have caused because TimeTrex is irreparably injuring (i) TruBridge's ability to successfully transition its customers to Paylocity, (ii) TruBridge's ability to retain customers, (iii) TruBridge's ability to obtain new business, and (iv) TruBridge's reputation in the EHR marketplace. The full extent of the foregoing injury is incapable of exact proof.

59. Unless it is restrained preliminarily and permanently, TimeTrex will continue to interfere with TruBridge's ongoing and prospective contractual and/or business relationships. This is evidenced by, among other facts, TimeTrex continuing to solicit TruBridge's customers after the parties had come to an agreement that it would not do so, in addition to TimeTrex engaging in direct support services to TruBridge customers in violation of the Agreement.

60. Accordingly, an Order of this Court requiring a preliminary and permanent injunction enjoining TimeTrex from continuing its actions is a necessary remedy if TruBridge is to obtain meaningful relief.

## **PRAYERS FOR RELIEF**

WHEREFORE, TruBridge, Inc., respectfully requests the following relief from this Honorable Court:

a) That this Court issue a temporary restraining order enjoining TimeTrex and all persons and entities acting in concert with TimeTrex from:

    i. Soliciting TruBridge's customers;

    ii. Conveying to TruBridge's customers that the end of the TruBridge-TimeTrex partnership will not affect their use of or support by TimeTrex and/or 3R;

    iii. Conveying to TruBridge's customers that TruBridge was withholding permission for TimeTrex to enter into agreements with them;

    iv. Providing support in violation of the Agreement;

      v.      Accessing TruBridge's customer information without authorization;

      vi.      Further interfering with TruBridge's ongoing and prospective contractual and/or business relationships.

    b)    That this Court issue a preliminary injunction enjoining the conduct of TimeTrex set forth above.

    c)    That after trial of this case, a permanent injunction be entered against TimeTrex enjoining the conduct set forth above.

    d)    That TruBridge be awarded all of its damages caused by TimeTrex's wrongful acts, including compensatory and punitive damages, along with costs incurred in bringing this action.

    e)    That TruBridge be given such other equitable and legal relief as is just and proper under the circumstances.

Respectfully submitted this <u>28th</u> day of March, 2025.

 

                                                         */s/ Walton Jackson*
                                                         WALTON JACKSON
                                                         *Attorney for Plaintiff TruBridge, Inc.*

**OF COUNSEL:**

MAYNARD NEXSEN
RSA Battle House Tower
11 N. Water Street, Suite 24290
Mobile, Alabama 36602
T: (251) 432-0001
F: (251) 432-0007
wjackson@maynardnexsen.com

## VERIFICATION

STATE OF ALABAMA    )

COUNTY OF MOBILE    )

W. Ryan Harkins, being duly sworn upon oath, deposes and says: a) I am Director of Legal Operations for TruBridge, Inc., Plaintiff in the above-entitled action, and on oath state that I am authorized to execute the above and foregoing verified complaint on behalf of Plaintiff; b) that not all of the facts stated therein are within my personal knowledge; c) the facts stated therein have been assembled by authorized employees and counsel of Plaintiff; and d) that subject to the limitations set forth therein, I am informed the allegations are true and correct.

_____
W. RYAN HARKINS

_____
Notary Public

My commission expires: 7/2/25

ANGELA R. STEWART
NOTARY PUBLIC, ALABAMA STATE AT LARGE
MY COMMISSION EXPIRES JUL. 02, 2025

11