# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **TRUBRIDGE, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | **CASE NO.: 1:25-CV-00122** |
| ) | |
| **v.** ) | |
| ) | |
| **TIMETREX SOFTWARE, INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## REPORT OF PARTIES' PLANNING MEETING

Pursuant to Fed. R. Civ. P. 26(f), a meeting was held on July 1, 2025 via a Microsoft Teams meeting and was attended by:

Madison Peace Nye, Esq., of Maynard Nexsen PC, and Ryan Harkins, of TruBridge, Inc., for Plaintiff TruBridge, Inc.,

Douglas L. Bridges, Esq., of AdamsIP Law, and Troy T. Schwant, of Burns, Cunningham & Mackey P.C., for Defendant TimeTrex

The parties do not request a conference with the court before entry of the scheduling order.

1. **The Parties' Narrative Statement of the Facts, Causes of Action, and Defenses**

   A. **Plaintiff's Narrative Statement of Facts and Cause of Action**

TruBridge, Inc. ("TruBridge" or "Plaintiff") provides an electronic health record system (EHR), as well as other goods and services, to rural and community healthcare organizations. As part of an EHR service bundle called 3R, TruBridge offers a human resources and payroll solution. Since 2019, TruBridge has used TimeTrex to provide part of this solution.

On December 15, 2019, TruBridge and TimeTrex entered a Master Agreement (the "Agreement") with a five-year term, by which TruBridge was permitted to sublicense the TimeTrex human resources and payroll solution—which allowed the healthcare organizations to enter time and attendance and payroll information for employees—in exchange for TruBridge paying a license fee. TruBridge handled the full implementation of the TimeTrex solution for the healthcare organizations it serves, including planning, system configuration, and profile set-up. TruBridge also provided the cloud environment and all customer-facing support. Further, TruBridge submitted Statements of Work to TimeTrex for TimeTrex to enhance configuration tables in the solution to meet TruBridge's customers' specific needs.

1

TruBridge fully performed under the parties' Agreement, including by pre-paying for far more licenses to TimeTrex's product than its customers were using. By the fifth year of the Agreement, TruBridge was paying for approximately eight times the licenses its customers were using. In late 2023, TruBridge and TimeTrex began discussions about renewing the Agreement. Shortly thereafter, TimeTrex told TruBridge that TimeTrex wanted to discontinue the services it was providing TruBridge and for TruBridge to turn its customers over to TimeTrex, charging TruBridge customers substantially higher rates for the same service.

On May 16, 2024, TimeTrex terminated the Agreement, pursuant to Section 8.1. TruBridge attempted to negotiate with TimeTrex to renew the Agreement, but to no avail—it could not succumb to TimeTrex's unreasonable demands. Even though the parties' relationship had deteriorated, under Section 8.5 of the Agreement, TruBridge opted to pay for post-termination support for its customers for up to two years (the "tail period") so that it could transition them to another provider. During the tail period, TimeTrex would be subject to certain terms and conditions of the Agreement. Despite its agreement to the tail period and accepting TruBridge's payment of $1.2 million for a year of additional services, TimeTrex has been directly marketing its goods and services to TruBridge's customers. The marketing attempts have become more and more aggressive over the past several months. Most recently, TimeTrex has inappropriately and wrongfully been sending a pop-up message each time TruBridge EHR customers log-in to their payroll solution, inviting them to "rapidly migrate" their data over to TimeTrex. This is something TimeTrex could only do if it used TruBridge-owned configuration tables. TimeTrex also sent a message that appeared to be from a cpsi.com[1] URL, and has been telling customers they can have the same experience if they contract with TimeTrex directly. TimeTrex has been negotiating agreements with TruBridge customers and has, in fact, entered into agreements with TruBridge customers.

Due to TimeTrex's wrongful actions, TruBridge has brought claims for breach of contract, tortious interference, false and misleading advertising, trespass to chattels, and unjust enrichment, seeking to recover its actual damages, injunctive relief, attorney's fees, costs, interest, and any other remedies to which it is entitled.

In response to TimeTrex's breach of contract counterclaim, TruBridge asserts the affirmative defenses of no material breach, excuse, full performance, mutual breach, unclean hands, waiver, lack of notice, and limited damages. In response to TimeTrex's copyright infringement claim, TruBridge asserts the affirmative defenses of implied license, express license, copyright misuse, and estoppel. In response to TimeTrex's unfair trade practices and defamation counterclaims, TruBridge asserts truth, lack of deception, immateriality, lack of injury, opinion, consent, and qualified privilege. In response to TimeTrex's unjust enrichment counterclaim, TruBridge asserts estoppel. And in response to TimeTrex's antitrust counterclaim, TruBridge asserts reasonable and good-faith conduct, that TimeTrex suffered no injury, and that TimeTrex is not due damages.

---

[1] TruBridge was formerly known as CPSI.

TruBridge incorporates herein its Amended Complaint (doc. 14) and answers and affirmative defenses to TimeTrex's counterclaims (doc. 15) and disputes TimeTrex's narrative below.

## B. **Defendant's Narrative Statement of Facts and Defenses**

In December 2019, TimeTrex and TruBridge entered into a Master Agreement that allowed TruBridge to sublicense certain versions of TimeTrex software to TruBridge's customers—specifically the On-Site Corporate Edition, On-Site Enterprise Edition, and On-Site Tablet Kiosk. The Agreement clearly stated that all intellectual property rights remained with TimeTrex, and that TruBridge only had a limited right to sublicense those specific versions. The Agreement did not include any non-compete or non-solicitation clause, so nothing prohibited TimeTrex from contracting directly with customers once the Agreement expired or was terminated.

In May 2024, TimeTrex gave timely notice that it would allow the Master Agreement to expire at the end of its term in December 2024. Although the Agreement had a clause allowing up to two years of post-termination support, that provision technically applied only if the Agreement was terminated — not if it naturally expired. Nevertheless, TimeTrex offered TruBridge the option to pay for continued support for one more year to help with its transition to a new vendor. TruBridge accepted that offer, extending support until December 2025.

Throughout the negotiations with Trubridge, TimeTrex shared its evolving business plan (which included expanding full-service payroll options) with TruBridge under confidentiality provisions in the Agreement, which clearly define business plans as confidential.

In January 2025, TruBridge sent a notice to its customers falsely stating that TimeTrex was "discontinuing support for our market in regard to key self-service capabilities." This was simply not true. TimeTrex never said it would discontinue self-service payroll entirely; rather, it planned to expand its offerings. TruBridge's statement harmed TimeTrex's reputation and discouraged TruBridge customers from switching directly to TimeTrex. TimeTrex contends that these statements also spread to other TimeTrex customers and the wider market, creating confusion.

TruBridge sued TimeTrex for breach of contract and tortious interference, claiming that TimeTrex was wrongfully contacting its customers. TimeTrex denies that it breached the Agreement, pointing out:

- It only notified TruBridge of expiration per the contract.
- There is no non-solicitation provision.
- TruBridge disclosed TimeTrex's confidential business plan to customers without permission breaching the contract first.
- TruBridge attached the entire Master Agreement unredacted in its public complaint, which TimeTrex says violates the confidentiality clause.

Meanwhile, TruBridge's customers were contacting TimeTrex directly, seeking to license the software because they preferred TimeTrex to Paylocity. TruBridge then allegedly blocked

those customers from amending their TruBridge contracts if they wanted to switch to TimeTrex —but allowed them to amend if they chose other vendors, which TimeTrex says is anticompetitive.

TimeTrex has asserted a breach of contract claim against TruBridge, which breached the confidentiality and publicity provisions by publicly sharing TimeTrex's confidential business plan and attaching the unredacted Master Agreement. TruBridge issued unapproved public statements about TimeTrex.

TimeTrex has asserted a copyright infringement claim based on TruBridge continued using and distributing the software and its customers kept accessing TimeTrex's servers, which TimeTrex says is unlicensed and infringing.

TimeTrex has asserted unfair trade practices claim as well as defamation claims, based on Trubridge's false and misleading statements about TimeTrex's support plans to its customers, creating confusion and harming TimeTrex's ability to compete. TruBridge's statements that TimeTrex was discontinuing key capabilities and was acting improperly were false and damaged TimeTrex's reputation.

TimeTrex has asserted an anti-trust claim based on TruBridge's practice of refusing to let customers amend their contracts if they switched to TimeTrex, but allowing them to switch to other providers, is allegedly an illegal exclusive dealing arrangement that restrains competition in violation of the Clayton Act.

In response to TruBridge's breach of contract claim, Trubridge waived and is estopped from asserting certain claims because it disclosed the very information it now complains about. Any damages are capped or limited by the Master Agreement. In responses to TruBridge's Tortious Interference claim, TimeTrex was not a stranger to the transaction, and was a vital component to the contracts that Trubridge claims TimeTrex interfered with. In response to Trubridge's claims of false and misleading statements, TimeTrex would assertively deny these allegations and would content that there is a factual dispute as to each alleged false statement. In response to Trubridge's trespass to chattels claim, TimeTrex would deny the allegations as stated. In response to the unjust enrichment claim, TimeTrex asserts that TimeTrex's payment for the 237,000 licenses was established by contract and was a flat rate, TimeTrex would deny the allegations of unjust enrichment as stated.

    2.    This bench trial action[2] should be ready for trial by September 8, 2026, and at this time is expected to take approximately 5-7 days.

    3.    The parties request a pretrial conference in August 2026.

    4.    <u>Discovery Plan</u>.  The parties jointly propose to the court the following discovery plan:

---

[2] While there has been no jury demand, TruBridge is considering asking the Court to order a trial by jury on all matters so triable.

Discovery will be needed on the following subjects:

- Allegations of the complaint;
- Counterclaims; and
- Defenses thereto.

All discovery commenced in time to be completed by April 17, 2026.

     5.    <u>Initial Disclosures</u>.  The parties will exchange by July 22, 2025 the information required by Fed. R. Civ. P. 26(a)(1).

     6.    The parties request until November 7, 2025 to join additional parties and amend the pleadings.

     7.    Reports from retained experts under Rule 26(a)(2) due:

        From Plaintiff and Counter-Plaintiff by January 16, 2025.

        From Defendant and Counter-Defendant by February 6, 2025.

     8.    <u>Pretrial Disclosures</u>.  Final lists of witnesses and exhibits under Rule 26(a)(3) due by August 9, 2026.

     9.    <u>Discovery Limits</u>.

Maximum of 25 interrogatories by each party to any other party.  Responses due 30 days after service.

Maximum of 10 depositions by Plaintiff and 10 by Defendants.  Each deposition is limited to 7 hours unless extended by agreement of parties.

Maximum of 35 requests for admission by each party to any other party except for requests to admit the authenticity of a document, which shall be unlimited.  Responses due 30 days after service.

Maximum of 35 requests for production of documents by each party to any other party. Responses due 30 days after service.

     10.    All potentially dispositive motions filed by May 1, 2026.

     11.    Settlement cannot be evaluated prior to May 12, 2026.

     12.    The discovery in this action will include Electronically Stored Information (ESI). In those cases where discovery of ESI is a probability, the parties shall discuss the substantive issues of the existence and location of the ESI, the preservation (including time period) of information, the ease/difficulty and costs of production, a schedule and format for production, and

a plan for how to manage privilege and work product protection issues. An ESI production agreement as to how to manage these issues shall be included in the Report. If the parties cannot agree on an ESI production agreement, the disagreements are to be listed in the Report.

Date: July 10, 2025.

*/s/ J. Walton Jackson*, by consent
*/s/ Madison Peace Nye*

J. Walton Jackson
Maynard Nexsen PC
11 N. Water Street, Suite 24290
Mobile, AL 36602

Madison Peace Nye
Maynard Nexsen PC
1901 Sixth Avenue, Suite 1700
Birmingham, AL 35203

*Counsel for Plaintiff TruBridge, Inc.*

*/s/ Douglas L. Bridges*, by consent
*/s/ Troy T. Schwant*, by consent

Douglas L. Bridges
Adams IP Law
453 Dauphin St.
Mobile, AL 36602

Troy T. Schwant
Burns, Cunningham & Mackey P.C.
P.O. Box 1583
Mobile, AL 36633

*Counsel for Defendant TimeTrex, Inc.*